# Exhibit 8

Outlook

**Fw: [FRE 408 COMMUNICATION] WILDFIRE AWARE | AWARECA**

**From** Kevin Touati <kevin.touati@lawhivelegal.com>
**Date** Mon 3/9/2026 12:52 PM
**To** Rachael Brady <rachael.brady@theanalyticalmoose.com>

Please see the attached.

Regards,
Kevin

---

**From:** Dan.Neustadt@hklaw.com <Dan.Neustadt@hklaw.com>
**Sent:** Thursday, February 19, 2026 11:56 AM
**To:** Kevin Touati <kevin.touati@lawhivelegal.com>; Lauren.Caverly@hklaw.com <Lauren.Caverly@hklaw.com>
**Cc:** Katherine.Markel@hklaw.com <Katherine.Markel@hklaw.com>; Andrea.Simonich@hklaw.com <Andrea.Simonich@hklaw.com>; pt-docketing@hklaw.com <pt-docketing@hklaw.com>
**Subject:** RE: [FRE 408 COMMUNICATION] WILDFIRE AWARE | AWARECA

Confirming receipt. We are conferring with our client and will revert presently.

Best,
Dan

**Dan Neustadt** | **Holland & Knight**
Phone 202.469.5163 | **Mobile 917.517.4928**
View professional biography

---

**From:** Kevin Touati <kevin.touati@lawhivelegal.com>
**Sent:** Wednesday, February 18, 2026 12:00 PM
**To:** Caverly, Lauren (NSH - X68831) <Lauren.Caverly@hklaw.com>; Neustadt, Dan (WAS - X75163) <Dan.Neustadt@hklaw.com>
**Cc:** Markel, Katherine A (TYS - X78047) <Katherine.Markel@hklaw.com>; Simonich, Andrea (WAS - X75558) <Andrea.Simonich@hklaw.com>; PT Docketing <pt-docketing@hklaw.com>
**Subject:** Re: [FRE 408 COMMUNICATION] WILDFIRE AWARE | AWARECA

*[External email]*
Dear Lauren,

Thank you for your response. While we appreciate your client's sentiments, we must firmly disagree with your legal assertions. Many of the claims in your letter are directly contradicted by Intterra's own public declarations and strategic actions.

1. **Direct Trade Channel Conflict and B2C Competition**

Your assertion that Intterra operates exclusively in B2G channels and targets a different class of consumers is directly contradicted by your client's own public statement. Intterra's January 2026

press release confirms the Spring 2026 launch of "AwareCA" on the Apple App Store and Google Play Store, the identical B2C channels where Wildfire Aware has maintained an established presence since 2022.

This distinction is material to the likelihood of confusion analysis. Wildfire Aware is the only registered trademark in this specific category currently available in these mobile app marketplaces; the third-party AWARE marks identified in the original USPTO office action do not operate in this channel or vertical. By targeting "every person living in or visiting the state" with wildfire activity updates, Intterra is intentionally entering our client's established market niche.

Intterra's CEO's public comments regarding the need to provide information "not from third-party aggregators or private apps" confirms that Intterra views this as a single market where it intends to compete directly. This statement evidences both competitive intent and awareness of existing market participants, including our client.

**2. Strategic Encroachment and Prior Knowledge**

Intterra's filing of 13 state-specific "AWARE" formative marks undermines your characterization of AWARE as a "weak" mark. This filing pattern instead demonstrates a calculated strategy to occupy the precise geographic and digital space where Wildfire Aware has established priority rights.

Additionally, Intterra's 2024 outreach expressing interest in acquiring the Wildfire Aware application confirms actual knowledge of our client's brand and its commercial value well before filing these competing applications. This prior interest is relevant to the bad faith inquiry and undercuts any claim that the similarity is coincidental.

We also note the risk of reverse confusion. Given Intterra's substantially greater resources and planned marketing presence, consumers encountering our client's established application may erroneously conclude that Wildfire Aware is an unauthorized, unverified, or inferior version of Intterra's state-branded platform. This harm to our client's goodwill is precisely what trademark law is designed to prevent.

**3. Formal Intent to Seek Judicial Relief**

Given the clear evidence of intentional market encroachment and the substantial likelihood of consumer confusion, our client is not limiting her response to USPTO opposition proceedings.

If this matter is not resolved prior to the Spring 2026 launch, our client is prepared to file a complaint in the United States District Court for the Northern District of California asserting claims for trademark infringement under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125(a), unfair competition under applicable state law, and such other claims as the facts may support under federal and state laws.

We will also seek all available relief, including preliminary and permanent injunctive relief against Intterra's use of AWARE-formative marks in the consumer mobile application marketplace, as well as disgorgement of profits, actual damages, and enhanced damages for willful infringement under 15 U.S.C. § 1117, attorneys' fees, and any other remedies available at law or in equity. Intterra's public statements regarding its intent to displace "private apps" will serve as evidence of willful conduct.

**4. Strategic Resolution via Acquisition**

Regarding your personal note acknowledging Rachael's "grit" and accomplishments, we appreciate the sentiment but find it difficult to reconcile with Intterra's current trajectory. Genuine

respect for what our client has built would counsel selection of a distinct brand identity that does not risk absorbing or displacing the mark she pioneered.

However, we recognize that Intterra's 2024 acquisition outreach and subsequent filing strategy reflect a considered decision to own the "AWARE" identity in this space. Given these circumstances, the most efficient path to avoid protracted federal litigation is a total acquisition of the Wildfire Aware brand, including the trademark registrations and pending applications, the mobile application, domain names, social media accounts, goodwill, and all associated intellectual property.

We are open to entertaining a serious acquisition offer as the sole alternative to the litigation path outlined above. Such a transaction would provide Intterra with clear title and a unified brand strategy for its B2C expansion, while ensuring our client receives fair compensation for the brand equity she has established since 2022.

We request a substantive response by March 4, 2026, addressing either (a) Intterra's willingness to pursue acquisition discussions, or (b) Intterra's commitment to rebrand its consumer-facing applications with a mark that does not incorporate "AWARE" formatives in the wildfire/emergency notification space.

Absent a satisfactory resolution, we will proceed with the federal filings referenced above prior to Intterra's announced Spring 2026 launch.

Very truly yours,

Kevin

---

**From:** Lauren.Caverly@hklaw.com <Lauren.Caverly@hklaw.com>
**Sent:** Friday, February 13, 2026 3:52 PM
**To:** Kevin Touati <kevin.touati@lawhivelegal.com>; Dan.Neustadt@hklaw.com <Dan.Neustadt@hklaw.com>
**Cc:** Katherine.Markel@hklaw.com <Katherine.Markel@hklaw.com>; Andrea.Simonich@hklaw.com <Andrea.Simonich@hklaw.com>; pt-docketing@hklaw.com <pt-docketing@hklaw.com>
**Subject:** RE: [FRE 408 COMMUNICATION] WILDFIRE AWARE | AWARECA

**FRE 408 COMMUNICATION – WITHOUT PREJUDICE**

Hi Kevin,

Thanks for taking time to speak with us last week. We wanted to memorialize our conversion in writing.

As discussed, our client's position is that there is no likelihood of confusion between its AWARE-formative marks and your client's WILDFIRE AWARE mark. For starters, there appears to be a number of third-party AWARE and AWARE-formative marks registered and used in connection with similar, overlapping, or related goods and services. To that end, it seems that AWARE and AWARE-formative marks have become relatively weak source indicators for the pertinent goods and services, such that the scope of protection for each is quite narrow. The differences between the parties' respective marks, therefore, should suffice to mitigate any risk of confusion.

Further, we believe such risk of confusion is minimal. The parties' respective marks look and sound different and offer different commercial impressions. Moreover, despite being offered in the same general field, the goods and services provided (or to be provided) under the marks have different

purposes, target different classes of consumers, and travel in different channels of trade. Your client's mobile application focuses exclusively on alerts and information relating to wildfires, and targets consumers living in areas prone to wildfires. On the other hand, our client's software is a comprehensive platform for supporting various disciplines of emergency response efforts, for all types of hazards. Additionally, while your client makes its B2C mobile applications generally available to the public via download from mobile app stores, our client offers its software exclusively to public-sector stakeholders – such as fire departments, law enforcement agencies, and emergency management teams – solely through B2G (business-to-government) channels. End users will only encounter our client's marks in connection with a government-provided service offered by first-response agencies. Accordingly, there is unlikely to be any opportunity for confusion, much less a likelihood thereof.

As you know, your client took a very similar stance during prosecution of her trademark application, arguing that there was no likelihood of confusion between WILDFIRE AWARE and the third-party mark AWARE for services in the same field. It is somewhat difficult, then, to reconcile your client's opposing views of the potential for confusion – especially given that here, the differences between your client's mark and our client's AWARE-formative marks are more readily apparent.

Given all the foregoing, our client believes the parties may use and register their respective marks without risk of confusion, and considers this matter closed.

To end on a more personal note, our client wishes to emphasize that they remain genuine fans of Rachael and her work. She has shown grit in building product from scratch, and nothing about our client's platform or mission is intended to diminish her efforts or directly compete with her. Intterra respects what Rachael has accomplished thus far, and sincerely wishes her continued success.

If you have any further questions, please let us know.

Best,
Lauren & Dan

**Lauren Caverly** | **Holland & Knight**
511 Union Street, Suite 2700 | Nashville, TN 37219
Phone: 615.850.8831

View professional biography

**From:** Kevin Touati <kevin.touati@lawhivelegal.com>
**Sent:** Wednesday, February 4, 2026 9:27 AM
**To:** Neustadt, Dan (WAS - X75163) <Dan.Neustadt@hklaw.com>
**Cc:** Markel, Katherine A (TYS - X78047) <Katherine.Markel@hklaw.com>; Simonich, Andrea (WAS - X75558) <Andrea.Simonich@hklaw.com>; PT Docketing <pt-docketing@hklaw.com>; Pratt, Lauren C (NSH - X68831) <Lauren.Pratt@hklaw.com>
**Subject:** Re: [FRE 408 COMMUNICATION] WILDFIRE AWARE | AWARECA

*[External email]*
Hi Dan,

Yes, that works.

Thanks,
Kevin

---

**From:** Dan.Neustadt@hklaw.com <Dan.Neustadt@hklaw.com>
**Sent:** Wednesday, February 4, 2026 12:07 AM
**To:** Kevin Touati <kevin.touati@lawhivelegal.com>
**Cc:** Katherine.Markel@hklaw.com <Katherine.Markel@hklaw.com>; Andrea.Simonich@hklaw.com <Andrea.Simonich@hklaw.com>; pt-docketing@hklaw.com <pt-docketing@hklaw.com>; Lauren.Pratt@hklaw.com <Lauren.Pratt@hklaw.com>
**Subject:** RE: [FRE 408 COMMUNICATION] WILDFIRE AWARE | AWARECA

Thanks, Kevin. Does 11 am ET work for you?

**Dan Neustadt** | **Holland & Knight**
Phone 202.469.5163 | **Mobile 917.517.4928**
View professional biography

**From:** Kevin Touati <kevin.touati@lawhivelegal.com>
**Sent:** Tuesday, February 3, 2026 11:21 PM
**To:** Neustadt, Dan (WAS - X75163) <Dan.Neustadt@hklaw.com>
**Cc:** Markel, Katherine A (TYS - X78047) <Katherine.Markel@hklaw.com>; Simonich, Andrea (WAS - X75558) <Andrea.Simonich@hklaw.com>; PT Docketing <pt-docketing@hklaw.com>; Pratt, Lauren C (NSH - X68831) <Lauren.Pratt@hklaw.com>
**Subject:** Re: [FRE 408 COMMUNICATION] WILDFIRE AWARE | AWARECA

*[External email]*
Hi Dan,

Sure - We can discuss on Friday. Let me know your availability in the morning if that still works.

Regards,
Kevin

---

**From:** Dan.Neustadt@hklaw.com <Dan.Neustadt@hklaw.com>
**Sent:** Tuesday, February 3, 2026 2:37 PM
**To:** Kevin Touati <kevin.touati@lawhivelegal.com>
**Cc:** Katherine.Markel@hklaw.com <Katherine.Markel@hklaw.com>; Andrea.Simonich@hklaw.com <Andrea.Simonich@hklaw.com>; pt-docketing@hklaw.com <pt-docketing@hklaw.com>; Lauren.Pratt@hklaw.com <Lauren.Pratt@hklaw.com>
**Subject:** [FRE 408 COMMUNICATION] WILDFIRE AWARE | AWARECA

**FRE 408 COMMUNICATION**
***Without prejudice***

Kevin,

We represent Intterra, LLC. Our client forwarded us your January 28 letter (attached). Please let us know your availability tomorrow or Friday to discuss this matter.

Best,
Dan

**Daniel C. Neustadt** | **Holland & Knight**
Partner
Holland & Knight LLP
800 17th Street N.W., Suite 1100 | Washington, District of Columbia 20006
Phone 202.469.5163 | **Mobile 917.517.4928**
dan.neustadt@hklaw.com | www.hklaw.com

Add to address book | View professional biography

---

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("Holland & Knight"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of Holland & Knight, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to Holland & Knight in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of Holland & Knight, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

---

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("Holland & Knight"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of Holland & Knight, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to Holland & Knight in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of Holland & Knight, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

---

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("Holland & Knight"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of Holland & Knight, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to Holland & Knight in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of Holland & Knight, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

---

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("Holland & Knight"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of Holland & Knight, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to Holland & Knight in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or

retained expert of Holland & Knight, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.