Daniel P. Kappes
CA State Bar No. 303454
Daniel.Kappes@hklaw.com
HOLLAND & KNIGHT LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Telephone: (415) 743-6900

Daniel C. Neustadt (*pro hac vice*)
NY State Bar No. 4532958
Dan.Neustadt@hklaw.com
Sara J. Benson (*pro hac vice forthcoming*)
DC Bar No. 1767612
Sara.Benson@hklaw.com
HOLLAND & KNIGHT LLP
800 17th Street N.W., Suite 1100
Washington, D.C. 20006
Telephone: (202) 955-3000

Lauren Caverly Pratt (*pro hac vice forthcoming*)
TN State Bar No. 040362
HOLLAND & KNIGHT LLP
511 Union St., Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380

*Attorneys for Plaintiff Intterra, LLC*

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INTTERRA, LLC,<br><br>Plaintiff,<br>v.<br><br>THE ANALYTICAL MOOSE LLC and RACHAEL BRADY,<br><br>Defendants. | Case No. 2:26-cv-00747-WBS-CSK<br><br>**INTTERRA LLC'S FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. William B. Shubb<br>Courtroom 5<br>Action filed: March 5, 2026 |

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Plaintiff Intterra, LLC ("Intterra" or "Plaintiff"), by and through its attorneys, Holland & Knight LLP, files this First Amended Complaint against Defendants The Analytical Moose LLC ("The Analytical Moose" or "TAM") and Rachael Brady ("Ms. Brady") (The Analytical Moose LLC and Ms. Brady, collectively, "Defendants"), alleging as follows:

**NATURE OF THE ACTION**

1. This is an action under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Intterra seeks a declaratory judgment of non-infringement as to the mark WILDFIRE AWARE ("Defendants' Mark") for downloadable software in the nature of a mobile application (or mobile "app") for providing public information on wildfires. Defendants' Mark is the subject of U.S. Trademark Registration No. 7403027, owned by The Analytical Moose.

2. In particular, Intterra seeks a declaration that its use of the marks AWARE, AWARECA, AWARE INTEL HUB, and AWARE OPS (the "AWARE Marks"), in connection with downloadable computer application software for processing, synthesizing and providing public safety information do not infringe upon Defendants' Mark.

**PARTIES**

3. Plaintiff Intterra is a Nevada limited liability company with a principal place of business at 1606 Headway Circle, Suite 9644, Austin, Texas 78754.

4. Defendant The Analytical Moose is a California limited liability company with a principal place of business at 6633 Mountain Side Drive, Igo, California 96047.

5. Defendant Rachael Brady is an individual California resident also at the address 6633 Mountain Side Drive, Igo, California 96047, and the founder, sole member, and sole owner and operator of The Analytical Moose. Upon information and belief, Ms. Brady is the only employee or person performing services for TAM. Ms. Brady developed the WILDFIRE AWARE mobile app, personally manages all aspects of TAM's business, and personally controls and directs all decisions relating to the development, marketing, licensing, and enforcement of the WILDFIRE AWARE application and brand. Upon information and belief, Ms. Brady does not maintain any meaningful separation between her personal and professional activities relating to the WILDFIRE AWARE brand, and any public reputation or goodwill associated with the WILDFIRE AWARE application is intertwined with Ms. Brady's personal identity and professional reputation.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C §§ 1331 and 1338(a), the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the Lanham Act, 15 U.S.C. § 1051 *et seq*. An actual and justiciable controversy exists between Intterra and each Defendant, including Ms. Brady individually, as to the alleged claims that Intterra's use of the AWARE Marks infringes Defendants' Mark. As described more fully below, Ms. Brady personally directed and participated in the cease-and-desist campaign against Intterra, personally asserted trademark rights in the WILDFIRE AWARE mark, and has personally threatened to bring claims for trademark infringement, unfair competition, and related claims against Intterra in federal court. Ms. Brady has further

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

alleged that she possesses personal common-law rights in the WILDFIRE AWARE mark, separate from and in addition to any rights held by TAM, by virtue of her development of the WILDFIRE AWARE app, her personal time, effort, and resources invested the brand, and her personal goodwill and reputation in the wildfire services community. Accordingly, a real and substantial controversy exists between Intterra and Ms. Brady in her individual capacity, in addition to and apart from The Analytical Moose.

7. This Court has personal jurisdiction over the Defendants, and venue is also proper in this Court under 28 U.S.C. § 1391(b)(1)-(2). Pursuant to L.R. 120(d), this case should be assigned to the Sacramento Division of this Court because the action arises in Shasta County. The Analytical Moose is organized under the laws of California and has a principal place of business in Igo, California. Ms. Brady is domiciled and resides in this district. Moreover, Defendants expressed intent to file suit in federal court based on the same set of facts and circumstances that led to the filing of this Complaint. Namely, based on Intterra's use of AWARECA and other AWARE Marks, Ms. Brady and TAM, through counsel, threatened to file suit against Intterra for infringement of Defendants' Mark, and Intterra now files this First Amended Complaint seeking a declaratory judgment of noninfringement of Defendants' Mark.

**DIVISIONAL ASSIGNMENT**

8. The Clerk's assignment of this case was appropriate and should remain unchanged.

**FACTUAL ALLEGATIONS**

**A. Intterra and Its Software.**

9. In 2010, in a landscape of tech companies centered on "disruption," Intterra was founded to create a platform that connects and serves communities. Since its formation, Intterra has become a leader in the field of software created to support public service agencies on the front lines of response to public safety threats. To fulfill its initial mission of supporting fire service agencies, Intterra originally created its software platform to aggregate and synthesize data from various disciplines of public service agencies, and present curated information in a way that would enable firefighters to make immediate, effective decisions. Over time, Intterra has expanded the nature and functions of its software solutions—from wildfire mapping and resource tracking, to evacuation modeling, EMS support, and community risk assessments—but its core mission to support first responders has never changed.

10. As such, Intterra markets and sells its software exclusively to governmental public safety agencies, including fire, EMS, and law enforcement agencies, at municipal, regional, state, and federal levels. Intterra's software products include the First Responder App, a common operating platform for agency command centers (available on mobile and desktop devices), the Community App for sharing real-time information with the public, and a backend Admin Portal that ensures the continuing operation of its user-facing apps. Though certain components of Intterra's software products may ultimately reach the general consuming public, Intterra's governmental agency customers bear the costs associated with providing such software to their constituents.[1]

[1] Additional information regarding Intterra and its software is available on its website at https://www.intterra.io/solutions. Screenshots of this webpage are attached hereto as **Exhibit A**.

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

11. Intterra's First Responder App and Community App collectively offer a wide variety of features that enable the chief officers and command points of public safety agencies to respond quickly and effectively to incidents. Key functions of Intterra's software include tools to manage geographic information system (GIS) tools, data feeds, and incident response components of Incident Command System frameworks, to develop plans to prepare for potential responses, to track, manage, and visualize airborne intelligence, and to securely share information with the public about incidents and events occurring in their jurisdiction. Today, command centers of fire service, law enforcement, search and rescue, and other public service agencies across the country use Intterra's software to maintain a centralized real-time view of public safety incidents.

12. In mid-to-late 2024, Intterra sought to develop another channel through which its governmental agency customers could securely share real-time information with the public: a mobile app. Created for both iOS and Android platforms, Intterra now sells a mobile app to public safety agencies as a component of its Community App solution. While the mobile app is intended for use by the general public, the key function of the mobile app necessarily depends on integration with the agencies' data sources. Intterra does not, and has no intent to, provide the mobile app to any private consumers independently (that is, without the data provided by the agencies who pay for Intterra's software). As such, the primary consumer base for Intterra's newly developed mobile app is the same class of consumers for all of Intterra's software; namely, governmental agencies.

13. Because government agencies cannot generally purchase any goods or services without following the appropriate procurement processes, the business-to-government (B2G) trade channels through which Intterra markets and sells its software are vastly different from traditional business-to-consumer (B2C) and business-to-business (B2B) marketing channels. At a high level, governmental agencies procure goods and services by awarding government contracts to suppliers. Typically, a government agency develops a procurement plan for goods or services to meet a specific need and invites prospective suppliers to submit bids. Prospective suppliers offer their goods and/or services by submitting a bid, and the agency evaluates all bids based on specified criteria. Following a more detailed evaluation and contract negotiation process, the agency may ultimate "purchase" the goods or services by awarding a government contract to the most suitable supplier. This procurement process requires governmental customers to adhere to strict budgets and to conduct significantly more diligence than private customers seeking goods and services through standard B2C or B2B channels.

14. In or around late 2025, Intterra began to offer its new mobile app to government public service agencies — many of which are existing customers of Intterra's software — via the same B2G channels through which Intterra offers its First Responder App and Community App. Because the mobile app sources data and information from, and serves as a channel of communication for, governmental agencies throughout any given state, Intterra markets and supplies (and intends to market and supply) its mobile app to its governmental customers under the mark AWARE, and an

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

AWARE-formative mark customized for each state comprised of AWARE plus a state-postal-code suffix, such as AWARECA for California agencies, AWAREHI for Hawaii, and AWAREFL for Florida.

15. On December 20, 2025, Intterra filed fourteen new trademark applications for a number of its AWARE-formative marks, including Application Serial No. 99572641 for the word mark AWARECA (the "Application"), for "Downloadable computer application software for mobile phones, and handheld and tablet computers, namely, software for use in the communication of public safety information; Downloadable computer software for sharing and viewing information about natural disasters, public safety events and emergencies, and preparedness therefor and responses thereto; Downloadable computer software for collecting, compiling, processing, and disseminating information about natural disasters, public safety events and emergencies, and preparedness therefor and responses thereto" in Class 9. Attached hereto as **Exhibit B** are materials downloaded from the U.S. Patent and Trademark Office's Trademark Status & Document Retrieval online database showing the current status of the Application.

16. On January 6, 2026, Intterra announced that the California Department of Forestry & Fire Protection (commonly known as "CAL FIRE") had selected Intterra's mobile app to be California's statewide public safety information platform. As CAL FIRE services the state of California, the mobile app will be made available to end users under Intterra's AWARECA mark. Attached hereto as **Exhibit C** is a true and correct copy of a press release for this announcement published on EIN Presswire. The Director & Fire Chief of CAL FIRE, Chief Joe Tyler, stated in the press

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

release, "By partnering with Intterra on AwareCA, we are ensuring that the public receives accurate, real-time updates directly from CAL FIRE and our allied responders." This statement reflects the fact that even though Intterra developed the mobile app, it is the governmental public safety agencies, ultimately, who will provide the mobile app to end users. Members of the public and other agencies have also expressed excitement for the launch of the mobile app under the AWARE Marks.[2]

17. Intterra's AWARECA mobile app is now in full beta.

18. Intterra has over 350 existing government agencies leveraging its legacy software platform that is being marketed and rebranded as AWARE INTEL HUB.

19. Intterra has an extensive sales funnel with government customers in various stages of the procurement process for its AWARE-branded software goods and services.

20. Numerous agencies have begun using Intterra's AWARE INTEL HUB software platform, which platform unifies agencies' real-time data into actionable intelligence or faster, smarter decisions.

21. In its marketing of the AWARE software services to government agencies, and in the process of procurement, Intterra has also referenced its AWARE OPS mobile app, described as a secure app for use by first responders with authenticated login and two-way communications.

22. Intterra has also continued to offer the AWARECA mobile app for sale to regional public safety agencies (*i.e.*, by

[2] *See* website screenshots of third-party references to Intterra's mobile app under the AWARE Marks, attached hereto at **Exhibit D**.

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

submitting bids for government contract awards, all of which are at various stages of the procurement evaluation process). By the end of 2026, Intterra expects that regional public safety agencies serving the majority of the California state population will have awarded Intterra a contract for the AWARECA mobile app, and thus users of the app throughout the majority of the state will be able to receive real-time information, collected from multiple authoritative governmental sources and synthesized for easy consumption, regarding all types of public safety incidents.

**B. Ms. Brady's Personal Involvement and Cease and Desist Letter.**

23. On January 28, 2026—less than a month after the announcement that CAL FIRE was partnering with Intterra on the AWARECA mobile app—Intterra received a demand letter from counsel acting on behalf of Ms. Brady exclusively. The letter alleges that the rights of Ms. Brady, as an individual, in the WILDFIRE AWARE mark are being infringed by dint of Intterra's use of AWARE, AWARECA, and AWARE CALIFORNIA. The letter demanded that Intterra (1) cease use of the complained-of marks, any confusingly similar marks, and any products or services using the complained-of marks; and (2) abandon the Application and any other trademark applications for AWARE or AWARE-formative marks. The letter further threatened that Ms. Brady was "prepared to take all necessary legal action" to protect "*her* senior trademark rights," including "seeking injunctive and monetary relief in federal court." (Emphasis added.) The letter makes no reference to TAM whatsoever. A copy of the January 28 letter is attached hereto as **Exhibit E**.

24. The January 28 letter was explicitly sent on behalf of Ms. Brady individually. Ms. Brady's counsel identified Ms. Brady personally as the rights holder and threatened litigation in Ms. Brady's name. Intterra's counsel subsequently investigated and discovered that the USPTO records identified TAM as the owner of U.S. Registration No. 7403027 for WILDFIRE AWARE. But even after this discovery, in a video call between the Parties' counsel to discuss the trademark dispute on February 6, 2026, Ms. Brady's counsel purported to represent Ms. Brady, not TAM, and in subsequent correspondence, Defendants' counsel continued to assert claims on behalf of both Ms. Brady and TAM. Upon information and belief, at all relevant times, Ms. Brady has personally participated in and directed the enforcement campaign against Intterra.

25. Ms. Brady has placed her personal interests squarely at issue in this litigation by, among other things: (a) causing the January 28 letter to be issued to Intterra in her name; (b) asserting her personal investment of time and resources into the WILDFIRE AWARE brand and application; (c) providing an interview to a journalist for ABC7 Eyewitness News for purposes of an article that was then published about this dispute; and (d) submitting sworn declarations in this litigation in her personal capacity. In those declarations, Ms. Brady attests to her personal history developing the application, her personal financial investment and the harm she will personally suffer from Intterra's conduct.

26. Moreover, upon information and belief, Ms. Brady personally used the WILDFIRE AWARE mark in commerce prior to TAM's

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

formation and/or prior to the assignment or transfer of any rights to TAM.

27. Ms. Brady is not merely a passive member of TAM; she is a person with a direct, personal commercial interest in the WILDFIRE AWARE mark within the meaning of the Lanham Act, 15 U.S.C. § 1125(a), and is a proper party to this declaratory judgment action.

**C. Past Interactions Between the Parties.**

28. As set forth above (see ¶ 12), Intterra sought to develop a mobile app add-on to its Community App software platform in 2024. Though Intterra had the technical resources to build the mobile app from scratch, Intterra desired to hire an individual into a product management role to lead the team of developers and designers for its new iOS and Android applications. One of Intterra's co-founders suggested Ms. Brady as a potential candidate for the role, as Ms. Brady had experience in the fire service industry and direct connections to the agencies the app would serve.

29. Intterra learned that Ms. Brady had developed her own mobile app and was providing it under the WILDFIRE AWARE mark. Intterra viewed this endeavor as a sign of Ms. Brady's grit and determination, as well as a check in the box for relevant experience and familiarity with building mobile apps. That said, after reviewing Ms. Brady's app, Intterra determined that it was not interested in building its new mobile app on top of her existing software, nor using her software in any manner. Nonetheless, Intterra recognized and deeply respected the significant effort and resources Ms. Brady had personally put into

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

building the app. Had she chosen to accept Intterra's offer of employment, Intterra wished for Ms. Brady to dedicate this same level of attention and effort to the product manager role and building their new mobile app.

30. Believing Ms. Brady was a good fit for the role, Intterra offered her the product manager position for their new mobile app. Intterra was cognizant that Ms. Brady and others had made significant financial and personal investments in developing the WILDFIRE AWARE app and brand, and also that Ms. Brady, in dedicating her full professional attention to the product management role going forward, would no longer be able to develop or maintain her WILDFIRE AWARE application. Thus, as a show of good faith and as an inducement to accept its job offer, Intterra structured the offer to include a bonus, to be paid over a three-year period, in purported exchange for the WILDFIRE AWARE app and brand. The contemplated bonus, which was intended to compensate Ms. Brady for the personal investments she and others had made in the app and the brand, was expressly conditioned upon Ms. Brady's continued employment over the three-year payment period.

31. Ms. Brady initially declined Intterra's offer for employment in November 2024. After several follow-up conversations, including a subsequent verbal offer of employment, Ms. Brady on March 3, 2025 ultimately declined the role of product manager.

32. In all of its interactions with Ms. Brady, Intterra's goal was to secure Ms. Brady's employment, not to acquire any rights associated with the WILDFIRE AWARE application and its relatively limited audience. Intterra's dealings were with Ms.

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Brady personally, and Ms. Brady held herself out as the sole individual with authority over and commercial interests in the WILDFIRE AWARE brand. At no time during these interactions did Ms. Brady suggest that TAM, rather than Ms. Brady individually, was the party with rights in or authority over the WILDFIRE AWARE application or trademark.

**D. Attempted Resolution of the Instant Dispute.**

33. Following Intterra's receipt of Defendants' January 28 letter, Intterra, via counsel, conducted a preliminary investigation into Ms. Brady's claims. This investigation revealed that the mobile app Defendants provide under the WILDFIRE AWARE mark offers data and information related to wildfires exclusively, not any other public safety threats, and does not relay communications from any governmental authorities other than the National Weather Service. In fact, Defendants' application states that it is positioned to "fill th[e] gap between when the fire starts and when official government evacuation notifications are sent." Moreover, though the app can be downloaded for free, a subscription is required for a user to receive notifications, as seen below:



12:17

Information close

Government notifications are routinely reflexive and not proactive. Wildfire Aware™ is positioned to fill that gap between when the fire starts and when official government evacuation notifications are sent. Wildfire Aware ™ allows everyone to get notifications within minutes of a wildland fire being dispatched within the wildlands and wildland-urban interfaces (WUI) throughout the United States. Every community member should be Wildfire Aware!

Wildfire Aware™ provides three main types of notifications:

1. **New Fire** notifications arrive within minutes of a wildland fire being dispatched. We do not filter fire notifications and we do not have a minimum acreage criterion before notifications are sent. If firefighters respond to a dispatched fire, a Wildfire Aware™ notification is made as soon as it is available (every once in a while notifications are delayed to issues outside our control). It is important to also realize where the fire shows initially on the map may not always be accurate, but should be within the vicinity.
2. **Multiple Day Fire** notifications are sent when the fire perimeter is updated (usually in the morning and evening) for ongoing fires that have encroached on your notification areas. We also provide updates when official government information is updated via InciWeb, when available. This will allow you to stay aware of larger ongoing fires which are sometimes hard to track.
3. **National Weather Service (NWS)** notifications are sent when weather conditions are conducive to wildfires or



12:17

Information close

3. **National Weather Service (NWS)** notifications are sent when weather conditions are conducive to wildfires or post-wildfire events (ie Debris Flows, Flooding, etc.). These notifications can help you prepare for a wildfire or recover from a wildfire safely.

Wildfire Aware™ is unique because the notifications are customized to you in three distinct ways:

1. **Customized Notifications Distances** are unique to each location and can range from 1 to 25 miles based on the user preference; **we recommend a minimum of 5 miles.** In our experience, fires can quickly move 5 miles when the conditions are right.
2. **Multiple Locations** can be set up and customized for notifications. For example, maybe for a user's home, they would like to know about all fires within 5 miles; but for their summer cabin, they want to have notifications for multiday fires within 25 miles. We are very generous in our number of locations allowing you to have up 50 locations that you are monitoring. So, when you are traveling you can set up a notification for your vacation destination that is nestled back in the trees and delete it when you leave. *We limit to 50 locations to limit abuse of the application. If you need more locations please reach out and we will do our best to accommodate.*
3. **Customized NWS (National Weather Service) Alerts** can be tailored to the user's desires. While Wildfire Aware™ has curated a specific set of NWS Alerts related to wildfires, we want the user to be able to customize it to their needs. We offer four distinct categories to

*Screenshots from Wildfire Aware iOS app*

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910







*Screenshots from Wildfire Aware iOS app*

34. Through their investigation, Intterra learned that The Analytical Moose, not Ms. Brady, owns U.S. Reg. No. 7403027 for WILDFIRE AWARE.[3] However, as noted above, the January 28 cease-and-desist letter sent on behalf of Ms. Brady personally identified

[3] Public business records for The Analytical Moose show that Ms. Brady is the manager/member and resides at the same address. The Analytical Moose's website also states that it was founded by Ms. Brady and indicates Ms. Brady is the only employee. A true and correct copy of the 2025 Statement of Information filed by The Analytical Moose with the California Secretary of State and the About Us page on The Analytical Moose Website are attached hereto at **Exhibit F**. Based on the foregoing, and Defendants' counsel's claim that Ms. Brady owns the mark WILDFIRE AWARE, Intterra believes that Ms. Brady is the sole member and owner of The Analytical Moose.

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

her, not TAM, as the trademark rights holder, and Ms. Brady has continued to personally assert and enforce rights in the WILDFIRE AWARE mark. Upon information and belief, Ms. Brady personally directed and controlled the prosecution and registration of the WILDFIRE AWARE trademark, and she personally uses the WILDFIRE AWARE mark in commerce in connection with her personal and business activities in the wildfire services community, as confirmed by the interview she provided to ABC7 Eyewitness News about this dispute.

35. Intterra also discovered that the examining attorney for the WILDFIRE AWARE application had provisionally refused registration due to a likelihood of confusion with a third-party mark, AWARE, subject of U.S. Reg. No. 3099983, for "situation awareness system, namely computer hardware, software and sensors, used to provide real-time or near-real-time GIS information regarding emergency incidents or aerial mapping projects" in Class 9 and "Preparation of printed or digital maps and emergency incident reports[4] through real-time or near-real-time information gathering" in Class 42.

36. Notably, in Defendants' September 20, 2023 response to the provisional likelihood-of-confusion refusal, Defendants argued (for ten pages) that there was no likelihood of confusion between WILDFIRE AWARE and AWARE for the respective goods and services.[5] Rather, Defendants contended that the WILDFIRE AWARE and AWARE look different, create very different connotations, and impart different commercial impressions, partially because the word WILDFIRE is "the most important part" of Defendants' mark.

---

[4] As of January 21, 2026, "and emergency incident reports" has been deleted from Class 42 of the cited registration.

[5] A copy of this response is attached hereto as **Exhibit G**.

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Defendants also asserted that their goods were not related to the goods and services covered by the cited registration, pointing to the "entirely different targeted audience[s]" and the differing channels of trade for the respective goods and services.

37. Defendants, in their efforts to secure registration of their alleged WILDFIRE AWARE mark, further claimed that there exists a crowded field for the AWARE designation, such that "aware" is entitled only to a narrow scope of protection, one that does not extend to Defendants' WILDFIRE AWARE mark. In support of their crowded field argument, Defendants included evidence of ten third-party registrations coexisting on the Principal Register for AWARE and AWARE-formative marks for similar Class 9 goods. All ten registrations, as well as the registration referenced by the examining attorney in the office action, are still subsisting.

38. Following its investigation into the allegations raised in Defendants' January 28, 2026 letter, Intterra's counsel arranged the February 6, 2026 video call with Defendants' prior counsel to discuss the matter. As described above in Paragraph 24, on the February 6, 2026 call, Defendants' counsel purported to represent Ms. Brady only. Counsel made no mention whatsoever of TAM.

39. On the call, Intterra's counsel stated Intterra believed there is no likelihood of confusion. Defendants' counsel maintained otherwise, despite Defendants' prior position to the contrary with respect to other AWARE and AWARE-formative marks. Intterra expressed interest in settling the matter, regardless of the Parties' opposing views on the issue of confusion, and Defendants' counsel requested that Intterra prepare an offer in

writing. Following the call, Intterra sent a follow-up email, dated February 13, 2026, reiterating its position, referencing the prosecution history of the WILDFIRE AWARE registration, and advising that Intterra considered the matter closed.

40. Defendants responded several days later, reasserting their claims of infringement and likelihood of confusion, and asserting new claims of malicious intent and bad faith based on Intterra's past interactions with Ms. Brady, which Defendants characterized as interest in acquiring the WILDFIRE AWARE application. Defendants also provided formal notice of their intent to bring a claim for trademark infringement in this Court:

> If this matter is not resolved prior to the Spring 2026 launch, our client is prepared to file a complaint in the United States District Court for the Northern District of California asserting claims for trademark infringement under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125(a), unfair competition under applicable state law, and such other claims as the facts may support under federal and state laws.

A true and correct copy of the email correspondence between Intterra's and Defendants' counsel is attached hereto as **Exhibit H**.

**E. An Actual Case or Controversy Exists Between Intterra and Each Defendant.**

41. "To establish standing to sue for trademark infringement under the Lanham Act, a plaintiff must show that show that he or she is either (1) the owner of a federal mark registration, (2) the owner of an unregistered mark, or (3) a nonowner with a cognizable interest in the allegedly infringed trademark." *Halicki Films, LLC v. Sanderson Sales and Marketing*, 547 F.3d 1213, 1225 (9th Cir. 2008); *see also* 15 U.S.C. § 1114(1). A party may





Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

establish ownership of an unregistered mark through use of the mark in commerce. *Halicki Films*, 547 F.3d at 1226. Under Lanham Act § 43(a), 15 U.S.C. § 1125(a), a non-owner of a mark may have standing to bring a claim if it can demonstrate a valid commercial interest in the mark that is likely to be damaged. *See also Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 310 F. Supp. 3d 1089, 1114 (S.D. Cal. 2018) ("[T]he question of ownership is immaterial to standing under § 43(a), since standing may lie with mere users of trademarks.").

42. The Ninth Circuit uses a "totality of the circumstances" test to determine whether a plaintiff has alleged sufficient use in commerce of service mark to establish standing under the Lanham Act. *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1159 (9th Cir. 2001); *see also New West Corp. v. NYM Co. of Calif., Inc.*, 595 F.2d 1194, 1120 (9th Cir. 1979); *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1052 (9th Cir. 1999). "For both goods and services, the 'use in commerce' requirement includes (1) an element of actual use, and (2) an element of display." *Chance*, 242 F.3d at 1159.

43. For these same reasons, Ms. Brady is a proper defendant in this declaratory judgment action. The relevant inquiry is whether there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Ms. Brady has personally asserted trademark rights against Intterra, personally threatened litigation, and has a direct personal commercial interest in the outcome of this dispute by virtue of

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

her sole ownership of TAM. Moreover, the facts and circumstances relating to dealings between Intterra and Ms. Brady in her individual capacity are material to this dispute. There is therefore an actual case or controversy between Intterra and Ms. Brady.

44. Intterra is the owner of all right, title, and interest in its AWARE Marks, by virtue of its pre-launch marketing of its impending AWARECA app under the AWARE Marks as well as its use of the AWARE Marks in connection with procurement of government contracts with California public service agencies for the AWARE software services.

45. More specifically, Intterra owns all right, title and interest to its AWARECA mark for a downloadable mobile app for use in communication of public safety information and all underlying and associated services. As further described above, marketing is accomplished quite differently in B2G trade channels, as compared to traditional B2C and B2B channels of trade. Use of a mark in submitting a bid for a government contract for procurement of a good or service is an effective — and potentially the only — way to display the mark in connection with an offer for sale of the good or service in the B2G trade channel. Being awarded a government contract based on such a bid constitutes a sale of goods and services provided under the mark, in this case, software goods and services for communication of information regarding public safety incidents and events. Accordingly, Intterra, through its submissions of bids for government contracts and the award of at least one government contract (with CAL FIRE), has demonstrated use of the mark consistent with standard marketing and advertising

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

practices in the field of software goods and services for governmental agencies.

46. With respect to the element of display, Intterra publicly announced the upcoming launch of its mobile app, under the AWARECA mark, for enabling governmental agencies to disseminate official communications regarding public safety incidents and threats based on authoritative governmental data and information. The AWARE Marks are prominently featured throughout Intterra's January 6, 2026 announcement,[6] including in a mockup of the mobile app loading screen:




*Screenshot of mockup of Intterra's mobile app*

47. Accordingly, Intterra has engaged in use of the AWARECA mark sufficient to establish standing to sue under the Lanham Act.

[6] *See* **Exhibit C**, attached hereto

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Therefore, Intterra has standing to bring this Complaint for a declaratory judgment of noninfringement under the Lanham Act.

48. Additionally, an actual controversy exists between the Parties. Defendants have expressly threatened to file suit against Intterra for infringement of their WILDFIRE AWARE mark. The threat of litigation casts a cloud over all the efforts Intterra has made to develop and bring its software to consumers as a governmental, taxpayer-funded service. As Intterra is rapidly nearing the launch of its AWARECA mobile app, rebranding is virtually impossible without delay. The specter of such delay cast by Defendants' threatened litigation places in jeopardy millions of dollars worth of government contracts for the mobile app that have already been awarded to Plaintiff or are in the process of procurement. The potential harm to Intterra is concrete and would be immediate if the Court does not grant the requested declaratory judgment.

**GENERAL ALLEGATIONS**

49. Intterra's AWARE Marks do not infringe on Defendants' WILDFIRE AWARE mark because there is no likelihood of confusion between the Parties' respective marks. The element AWARE has become a relatively weak source indicator for the pertinent goods and services, such that the scope of protection for such designation is quite limited. The differences between the Parties' respective marks – including the dominance of the primary WILDFIRE element in Defendants' mark – therefore suffice to mitigate any perceived risk of confusion.

50. The Parties' respective marks also look and sound different and offer different commercial impressions, and despite being offered in the same general field and ultimately serving

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

overlapping sets of end users, the goods and services provided under the marks have different primary purposes. Defendants' mobile app focuses exclusively on alerts and information relating to wildfires, and targets consumers living in areas prone to wildfires, while Intterra's software is a comprehensive platform for supporting various disciplines of emergency response efforts, for all types of hazards. Most notably, though, the Parties' goods and services target different classes of consumers, and travel in different channels of trade. Defendant offers its mobile app for free download, but sells in-app subscriptions to individual users of its mobile app. On the other hand, Intterra markets and sells its software under the AWARE Marks primarily in B2G channels of trade, and seeks payment for its mobile app under government contracts. This allows Intterra's agency customers to provide the app to end users as a public service, funded by their tax dollars.

51. Additionally, upon information and belief, the sole revenue that Defendants derive from their B2C mobile app is via in-app subscriptions. Intterra's AWARECA app will always be entirely free to the public. The source of the revenue that Intterra derives and will derive from its AWARE-branded services are public sector stakeholders – such as fire departments, law enforcement agencies, and emergency management teams – and such revenue flows and will flow solely through B2G channels. General consumers will encounter Intterra's AWARECA mark only in connection with a government-provided service offered by first-response agencies, and always under the official names or seals of such agencies. Accordingly, there is unlikely to be any opportunity for confusion, much less a likelihood thereof.

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

52. Despite the foregoing, Defendants have expressed a genuine intent to file suit for trademark infringement (as further detailed in Paragraph 36 above). Such a lawsuit has potential to significantly hinder Intterra's efforts in fulfilling its obligations under government contracts and in winning further bids to provide its mobile app to additional agency customers. Therefore, this dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## **CLAIMS FOR RELIEF**

## **COUNT I:**

### **Declaratory Judgment of Noninfringement of Defendant's WILDFIRE AWARE Mark**

53. Intterra repeats and realleges each and every allegation above as if fully set forth herein.

54. Intterra is entitled to a declaratory judgment that it is not infringing, has not infringed, and is not liable for infringing Defendants' alleged rights in the WILDFIRE AWARE mark, including any common-law rights or commercial interests personally held or claimed by Ms. Brady in the WILDFIRE AWARE mark.

55. The instant dispute is sufficiently concrete and immediate to warrant the issuance of a declaratory judgment.

56. Defendants allege that Intterra's use of its AWARECA mark infringes its alleged rights in the WILDFIRE AWARE mark.

57. There is no likelihood of confusion with respect to the Parties' respective marks. The marks look and sound different and convey different commercial impressions, and the goods and services provided under the marks have different purposes, target different classes of consumers, and travel in different channels

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

of trade. Moreover, because of the high level of sophistication of Intterra's government agency customers and unique process through which Intterra sells its software, there is unlikely to be any opportunity for confusion, much less a likelihood thereof. In the exceedingly rare instances where consumer may encounter both of the Parties' respective marks in commerce, Intterra's AWARECA mark will appear alongside the name(s) and/or mark(s) of one or more public safety agencies and Intterra's app will be presented as an official government-provided service.

58. In light of the foregoing, among other factors, consumers are unlikely to mistakenly believe that there is any connection or affiliation between the Parties, or that either party's app is sponsored, produced, or associated with the other party or its app.

59. Intterra's use of its AWARECA mark does not infringe any rights—whether federal, common-law, or otherwise—held by TAM or Ms. Brady individually in the WILDFIRE AWARE mark. Because both Defendants have threatened action in federal court to prevent Intterra from continuing to use its AWARECA mark, including threats made on behalf of Ms. Brady personally, and because such action is likely to hinder Intterra's abilities to fulfill obligations under existing government contracts, Intterra is entitled to a declaratory judgment of noninfringement of Defendants' WILDFIRE AWARE mark as against both TAM and Ms. Brady.

60. Because Defendants have threatened action in this Court to prevent Intterra from continuing to use its AWARECA mark, which is likely to hinder Intterra's abilities to fulfill obligations under existing government contracts, and because a declaration by

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

this Court that Intterra's use of the AWARECA mark does not infringe Defendants' alleged rights in the WILDFIRE AWARE mark will allow Intterra to continue providing its mobile app to public safety agencies for dissemination to private citizen end users under the AWARECA mark, without disruption and fear of litigation, Intterra is entitled to a declaratory judgment of noninfringement of Defendants' WILDFIRE AWARE mark.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Intterra respectfully requests judgment against Defendant The Analytical Moose and Defendant Rachael Brady, individually, as follows:

a. Find and declare that Intterra's use of its AWARECA mark does not infringe any of Defendants' alleged trademark rights, whether federal, state, common law, or otherwise, in WILDFIRE AWARE, including any rights personally held or claimed by Ms. Brady;

b. Enter an order enjoining each Defendant from directly or indirectly asserting or otherwise enforcing any alleged trademark rights against Intterra or any of its customers or licensees of its AWARECA mark;

c. Award Intterra reasonable attorneys' fees, expenses, and costs in this action; and

d. Granting such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Intterra demands a trial by jury on all issues so triable in this action.

Dated: April 23, 2026 **HOLLAND & KNIGHT LLP**

By: */s/ Daniel P. Kappes*

Robert S. Hill (CA Bar No. 276056)
Robert.Hill@hklaw.com
Daniel P. Kappes (CA Bar No. 303454)
Daniel.Kappes@hklaw.com
Daniel C. Neustadt (NY Bar No. 4532958) *(pro hac vice)*
Dan.Neustadt@hklaw.com
Sara J. Benson (DC Bar No. 1767612) (*pro hac vice forthcoming*)
Sara.Benson@hklaw.com
Lauren Caverly Pratt (TN Bar No. 040362) (*pro hac vice forthcoming*)
Lauren.Caverly@hklaw.com
**HOLLAND & KNIGHT LLP**
800 17th Street N.W., Suite 1100
Washington, D.C. 20006
Telephone: (202) 955.3000

*Attorneys for Plaintiff Intterra, LLC*

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910